IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-352

| | |
|---|---|
| DISABILITY RIGHTS NORTH CAROLINA, <br><br> Plaintiff, <br><br> v. <br><br> SAMUEL SCOTT PAGE, in his official capacity as Sheriff for Rockingham County, and ROCKINGHAM COUNTY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) COMPLAINT ) ) ) ) ) ) |

## INTRODUCTION

1. Plaintiff Disability Rights North Carolina ("Disability Rights NC"), is the federally mandated and duly designated Protection and Advocacy System ("P&A") for individuals with disabilities in North Carolina.

2. To safeguard the civil rights and safety of people with disabilities, P&As, including Disability Rights NC, are explicitly authorized by federal statutes to reasonable unaccompanied access to monitor in facilities that provide services to people with disabilities and to people with disabilities in any location where they are receiving services. Jails are specifically enumerated as a place P&As are entitled to access.

3. Disability Rights NC notified Defendant Page, the elected official in charge of the Rockingham County Detention Center ("RCDC"), the jail located in Rockingham County, North Carolina, of its intent to exercise its federally granted authority to monitor at RCDC.

4. Defendants are refusing to allow Disability Rights NC access to all areas of the jail that incarcerated persons can access and to speak to all individuals within RCDC, which are impermissible and unlawful limitations on Disability Rights NC's federal authority.

JURISDICTION AND VENUE

5. Disability Rights NC brings this action for declaratory and injunctive relief for violation of the Protection and Advocacy for Individuals with Mental Illness act (PAIMI), 42 U.S.C. § 10801 *et seq.*, and its implementing regulations, the Protection and Advocacy for Individuals with Developmental Disabilities act (PAIDD), 42 U.S.C. § 15041 *et seq.*, and its implementing regulations, the Protection and Advocacy of Individual Rights act (PAIR), 29 U.S.C. § 794e, and its implementing regulations, and the Protection and Advocacy for Persons with Traumatic Brain Injuries act (PATBI), 42 U.S.C. § 300d-53 (collectively "P&A Acts").

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants the Court original jurisdiction in all actions authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the United States Constitution and Acts of Congress.

7. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1)&(2). The events or omissions giving rise to Plaintiff's claims occurred in this District and Defendants may be found here.

## PARTIES

9. Plaintiff Disability Rights NC is the duly designated P&A for individuals with disabilities in North Carolina. *See* 42 U.S.C. §§ 15001(b)(2), 15043, & 10805.

10. Disability Rights NC, a non-profit corporation independent of state government, is incorporated in North Carolina and maintains its principal place of business in Raleigh, North Carolina.

11. Disability Rights NC receives federal funds pursuant to the P&A Acts and is thereby obligated and authorized to provide protection and advocacy services for individuals with disabilities.

12. Disability Rights NC is a "person" authorized to seek legal and equitable relief against entities that deprive it of rights granted to it under federal law.

13. Defendant Page is the Sheriff for Rockingham County and has responsibility for "the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof." *See* N.C. Gen. Stat. § 162-22. Defendant Page is sued in his official capacity.

14. Defendant Rockingham County is vested with the authority to establish and operate RCDC. *See* N.C. Gen. Stat. § 153A-218.

15. All of Defendants' complained-of actions were taken under color of state law for purposes of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

16. Federal law establishes a national system of protection and advocacy (P&As) organizations for people with disabilities.

3

17. "Disability" under the P&A Acts includes: people with a significant mental illness or emotional impairment; people with a mental or physical impairment that manifests before age 22, is likely to continue indefinitely, results in substantial functional limitations requiring lifelong support, which is also referred to as an intellectual and/or developmental disability; individuals with a traumatic brain injury; and, individuals with disabilities that are not defined as a significant mental illness or intellectual/developmental disability such as mobility impairments, hearing loss, visual impairments, diabetes, substance use disorder, among others. *See* 42 U.S.C. §§ 10802, 15002(8)(A), & 300d-53; 29 U.S.C. § 794e(f).

18. To ensure the P&As' ability to fulfill their mission of safeguarding the rights and well-being of individuals with disabilities in congregate settings, the federal P&A Acts guarantee P&As the right to reasonable access to facilities and people with disabilities therein, including specifically, jails.[1] *See* 42 U.S.C. §§ 10805(a)(3), 15043(a)(2)(H), & 300d-53(k); 29 U.S.C. § 794e(f); 42 C.F.R. §§ 51.2 & .42; 45 C.F.R. § 1326.27(c)&(d).[2]

---

[1] The prevalence of individuals with disabilities in jails is well known and documented. "[J]ailed persons are 5 times more likely to have a serious mental illness and approximately 12 times more likely to have a substance use disorder than those in the general population. Those incarcerated in jails also have higher rates of infectious disease, other chronic illnesses, and traumatic brain injury than those in the general population." Jessica Carda-Auten et al., *Jail Health Care in the Southeastern United States From Entry to Release,* 100 MILBANK Q. 722, 724 (2022), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9576246/ (last visited April 25, 2024).

[2] All federal P&A Acts explicitly adopt the access authority provisions of the PAIDD act with the exception of the PAIMI Act; the PAIMI Act provides an independent basis for P&A access authority that is materially identical in its scope as that provided by the PAIDD act.

19. The P&A Acts also grant the P&As the right to photograph all areas of a facility, including jail facilities, that are used by individuals housed in the facility. 42 C.F.R. § 51.42 (c)(3); 45 C.F.R. § 1326.27(c)(2)(iii).

20. The P&A Acts require that the P&A be provided with access immediately upon an oral or written request with extremely limited exceptions. 45 C.F.R. § 1326.27(c)(1)(discussing brief delay of access if needed to avoid interfering with treatment or therapy.) If access will not be immediately provided, a written statement explaining the basis for the delay or denial of access must be timely provided. 45 C.F.R. § 1326.27(c); 42 C.F.R. § 51.43.

*Disability Rights NC's Efforts to Monitor at RCDC*

21. On or about January 23, 2023, Disability Rights NC notified Defendant Page of Disability Rights NC's federally granted access authority and of its intent to monitor at RCDC pursuant to the P&A Acts.

22. RCDC is a jail, a type of facility explicitly identified by the P&A Acts as required to allow Disability Rights NC access to the facility and the persons housed therein. Also, all jails operating in North Carolina must provide medical and behavioral health services to people in their custody, which means RCDC is a provider of services, care, and/or treatment to people with disabilities,[3] a secondary and additional basis for its obligation to allow Disability Rights NC access to monitor pursuant to the P&A Acts.

---

[3] For example, in one recent year at RCDC, there were 442 onsite mental health appointments. *See* Rockingham County Board of Commissioners Regular Meeting, Session Packet (Jan. 3, 2023) at *182,

5

23. On or about January 31, 2023, Clyde B. Albright, County Attorney for Rockingham County, notified Disability Rights NC that it would not be provided access to monitor at RCDC. Mr. Albright indicated that Disability Rights NC would be given access to records if requested to investigate a specific incident.

24. Throughout March 2023, Disability Rights NC continued corresponding with Defendants in an attempt to resolve the dispute regarding Disability Rights NC's authority to monitor at RCDC. Defendants were unyielding and Disability Rights NC was unable to exercise its federally granted authority to monitor RCDC in 2023.

25. In January 2024, after conducting monitoring visits at other jails throughout North Carolina pursuant to its access authority, Disability Rights NC renewed its efforts to monitor at RCDC and advised Defendants it would sue to enforce its federal authority if access to monitor was not granted by February 15, 2024.

26. Defendants responded in February 2024, maintaining their position that Disability Rights NC has the right to investigate "a specific incident" and to speak to specific individuals identified in advance of a visit by Disability Rights NC to RCDC, but not to conduct routine monitoring visits. Defendants also claimed to transfer, and not to keep individuals with mental illness and developmental disabilities in RCDC.

27. Disability Rights NC and Defendants ultimately agreed that Disability Rights NC would monitor at RCDC on March 6, 2024.

---

https://www.rockinghamcountync.gov/docview.aspx?doctype=packetDoc&docid=12462 (excerpt from the 2022 Rockingham County NC Performance Measure Report). RCDC also maintains self-designated "disability cells." Answer at 4, 7, ECF No. 27, *Nelson v. Rockingham Cnty., et al.*, 23-CV-488 (M.D.N.C. 2023).

28. When Disability Rights NC staff arrived to monitor on March 6th, they were informed that they would be restricted to monitoring in the booking and holding area of the jail and in the Magistrate's office, and could only speak with incarcerated individuals who had been identified to Defendants in advance of Disability Rights NC's monitoring visit despite the fact that monitoring is the means by which many individuals learn about the availability of assistance from Disability Rights NC. The restrictions Defendants placed on Disability Rights NC's monitoring did not comport with Disability Rights NC's federally granted monitoring authority.

29. On March 7, 2024, Defendants informed Disability Rights NC that it would now be permitted to monitor in the booking and holding area, in the Magistrate's office, *and* the nurse's station and control center. Defendants maintained that Disability Rights NC could only speak with incarcerated individuals identified to RCDC in advance of the monitoring visit.

30. On March 19, 2024, Disability Rights NC reiterated to Defendants that the restrictions they placed on the areas of the facility and the individuals to whom Disability Rights NC would have access did not comport with the P&A statutes, and that Disability Rights NC would file suit if it was not provided access to RCDC consistent with the full scope of its P&A authority.

31. On April 3, 2024, Defendants informed Disability Rights NC that Defendants would be providing a "consent form" to persons in the jail to indicate their interest in speaking with Disability Rights NC when Disability Rights NC returned to monitor at RCDC. Individuals would sign the "consent form" in advance of Disability

7

Rights NC's visit and would not have the opportunity to speak with Disability Rights NC before deciding whether to sign the "consent form."

32. On April 9, 2024, Disability Rights NC staff returned to RCDC to monitor. RCDC staff were very personable and endeavored to fully answer all questions from Disability Rights NC. However, Defendants maintained their refusal to provide Disability Rights NC access to RCDC consistent with the federal P&A statutes. Specifically, Disability Rights NC was not provided access to cellblocks, which denied Disability Rights NC the opportunity to learn about and address rights violations or to communicate with people throughout the jail about the P&A and the services it offers. Disability Rights NC was also told it could only communicate with approximately 30 individuals (out of over 200 people in the jail that day) who signed a "consent form" in advance of the visit.

33. On April 9, 2024, Defendants also told Disability Rights NC that its access to RCDC was limited to 2 hours. Because of the limited time allowed for access, Disability Rights NC was only able to meet with 5 individuals total. RCDC did not provide private meeting space, requiring Disability Rights NC to conduct these 5 meetings in an open seating area near the booking station, with jail staff and other incarcerated individuals in close proximity. Disability Rights NC's request to return to RCDC after lunch to continue meeting with incarcerated individuals was denied.

34. The lengthy delay in providing access and the limitations Defendants are placing on Disability Rights NC's access to RCDC are inconsistent with the P&A Acts and impairs Disability Rights NC's ability to protect and advocate for persons with disabilities incarcerated at RCDC. *See* 42 U.S.C. § 15043(a)(2)(H); 45 C.F.R. §

1326.27(c)&(d); 42 C.F.R. § 51.42(c) (collectively granting the right to access all areas within jails that are accessed by incarcerated persons to monitor for compliance with respect to the rights and safety of persons with disabilities housed in the jail, the ability to communicate information about P&A services and contact information and to provide information and training about individual rights to all individuals encountered during monitoring visits).

35. Defendants' denial of Disability Rights NC's right of access was under color of state law and not based on any exception provided by the P&A Acts or applicable law.

## CLAIMS FOR RELIEF

### First Cause of Action – The P&A Acts

36. Defendants' refusal to permit Disability Rights NC access to monitor in all areas of the jail accessible by incarcerated persons, the restrictions Defendants placed on the individuals with whom Disability Rights NC can communicate, and the strict time limitations placed on Disability Rights NC's access to RCDC to monitor unlawfully deprives Disability Rights NC of its statutory rights under the P&A Acts and the regulations implementing those acts.

37. Defendants' violations of the P&A Acts irreparably harms Disability Rights NC by preventing it from carrying out its responsibilities under those acts.

38. Unless Defendants are enjoined and ordered to provide Disability Rights NC the access required by the P&A Acts, Disability Rights NC will continue to be

irreparably harmed and will be unable to protect and advocate for persons with disabilities at RCDC.

## Second Cause of Action – Section 1983

39. Defendants' complained-of actions were taken under color of, and pursuant to authority granted by, state law.

40. Defendants' restrictions and conditions on Disability Rights NC's exercise of its federally mandated right of access to monitor the jail under Defendants' control deprives Disability Rights NC of the "rights and privileges secured by the Constitution and [federal] laws." *See* 42 U.S.C. § 1983.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1. Enter a declaratory judgment that Defendants' refusal to provide Disability Rights NC timely, reasonable access (including the artificial limitations on the amount of time access was provided), to all areas of the Rockingham County Detention Center that incarcerated individuals can access and to allow Disability Rights NC to communicate with all individuals incarcerated within the jail violates the PAIMI, PAIDD, PAIR, and PATBI Acts;

2. Enter a declaratory judgment that Defendants' refusal to provide timely, reasonable access (including the artificial limitations on the amount of time access was provided), to the Rockingham County Detention Center consistent with the PAIMI,

PAIDD, PAIR, and PATBI Acts was done under color of state law and in violation of Section 1983;

3. Enter permanent injunctive relief requiring Defendants to provide Disability Rights NC with immediate access to Rockingham County Detention Center and the individuals housed therein consistent with the full scope of Disability Rights NC's federal monitoring authority under the PAIMI, PAIDD, PAIR, and PATBI Acts;

4. Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of the PAIMI, PAIDD, PAIR, and PATBI Acts;

5. Award Disability Rights NC attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

6. Award such other, further or different relief as the Court deems equitable and just.

This 26th day of April, 2024       Respectfully submitted,

/s/ Holly Stiles
Holly Stiles
holly.stiles@disabilityrightsnc.org
N.C. State Bar No. 38930
Susan H. Pollitt
Susan.pollitt@disabilityrightsnc.org
N.C. State Bar No. 12648
Luke Woollard
luke.woollard@disabilityrightsnc.org
N.C. State Bar No. 48179
Marisa Leib-Neri
N.C. State Bar No. 61389
marisa.leib-neri@disabilityrightsnc.org
DISABILITY RIGHTS NC
801 Corporate Center Drive, Suite 118
Raleigh, NC 27607

11

Phone: (919) 856-2195
Fax: (919) 856-2244

ATTORNEYS FOR PLAINTIFF