IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-352-UA-JLW

| | | |
|---|---|---|
| DISABILITY RIGHTS NORTH CAROLINA,<br><br>Plaintiff,<br><br>v.<br><br>SAMUEL SCOTT PAGE, in his official capacity as Sheriff for Rockingham County, and ROCKINGHAM COUNTY,<br><br>Defendants. | ) | MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

Now comes Plaintiff Disability Rights North Carolina, by and through undersigned counsel, and files this Memorandum of Law opposing Defendant's Motion to Dismiss the Complaint.

**INTRODUCTION**

Defendants have prevented Plaintiff Disability Rights NC from carrying out its federally-mandated role in monitoring facilities to ensure that people with disabilities are not being subject to abuse, neglect, or discrimination. After notice, Defendants delayed and then denied full monitoring access to Disability Rights NC, in contravention of well-established federal law. Having denied Disability Rights NC required access to the Rockingham County Detention Center ("RCDC"), Defendants now ask the Court to further delay Disability Rights NC's access to monitor at RCDC by dismissing the case. Defendants' contention that this matter is not "ripe" rests on Defendants' arrogation to themselves of the authority to make a "formalized decision" at some indeterminate time and based on whatever amount of additional information they may demand in the future.

The P&A statutes emphatically do not grant facilities this type of control or veto power over P&A monitoring. Defendants' argument that Defendant Rockingham County lacks responsibility for the jail is likewise contrary to law. Finally, Defendants' assertion of lack of personal jurisdiction was not briefed and is therefore abandoned.

Defendants Motion to Dismiss is legally unsound, and merely serves to delay and improperly interfere with Disability Rights NC's exercise of its federally-granted monitoring authority to ensure that individuals with disabilities at RCDC are not being confined in unsafe, inhumane, and unlawful conditions. Disability Rights NC respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

## STATEMENT OF THE CASE

Plaintiff filed its Complaint in this case on April 26, 2024 (ECF No. 1.) Defendants executed Waivers of Service on May 3, 2024, (ECF Nos. 5 & 6), and pursuant to Fed. R. Civ. P. 4, Defendants' response to the Summons and Complaint was due on July 2, 2024. Defendants filed a Motion to Dismiss and Answer on July 2, 2024. (ECF Nos. 8-11.)

## STATEMENT OF FACTS

On January 23, 2023, Plaintiff Disability Rights North Carolina ("Disability Rights NC") notified Defendant Page of its intent to monitor at Rockingham County Detention Center ("RCDC") pursuant to its federally granted access authority. (Compl. ¶ 21, ECF No. 1; Woollard Decl. Ex. A.) Disability Rights NC explained that it had the right to visit all housing units and to communicate privately with individuals who consented to speak with Disability Rights NC. (Woollard Decl. Ex. A.) On January 31,

2023, Clyde B. Albright, County Attorney for Rockingham County, responded that Disability Rights NC would not be provided access to monitor at RCDC, and would only be provided access to records requested to investigate a specific incident. (Compl. ¶ 23; Woollard Decl. Ex. B.)

Throughout March 2023, Disability Rights NC continued corresponding with Defendants in an attempt to resolve the dispute regarding Disability Rights NC's authority to monitor at RCDC but Defendants were unyielding and Disability Rights NC was unable to exercise its federally granted authority to monitor RCDC in 2023. (Compl. ¶ 24; Woollard Decl. Exs. C-I.)

On January 22, 2024 and January 31, 2024, after monitoring other jails throughout North Carolina, Disability Rights NC notified Defendants it would seek judicial intervention if it was not granted access to monitor RCDC by February 15, 2024. (Compl. ¶ 25, Woollard Decl. Exs. J & K.) On February 5, 2024, Defendants reiterated its position that Disability Rights NC only has the right to investigate "a specific incident" and only to speak to specific individuals identified by Disability Rights NC in advance of its visit. (Compl. ¶ 26; Woollard Decl. Ex. L.)

On February 14, 2024, Defendants again requested the name of the individual Disability Rights NC sought to meet with and agreed to meet with Disability Rights NC at the jail to discuss its request for access. (Compl. ¶ 26; Woollard Decl. Ex. N.) In advance of the meeting, Disability Rights NC provided Defendants with a lengthy description of what to expect during its monitoring visit, including that Disability Rights

NC was *not* requesting to bring cameras along or requesting unaccompanied access for this monitoring visit. (Woollard Decl. Ex. N.)

After some back and forth, Disability Rights NC and Defendants eventually appeared to agree that Disability Rights NC would monitor at RCDC on March 6, 2024. (Compl. ¶ 27; Woollard Decl. Exs. O-U.) When Disability Rights NC staff arrived to monitor on March 6th, they were told they would only be provided access to the booking and holding area of the jail and the Magistrate's office and could only speak with incarcerated individuals who had been identified to Defendants in advance of Disability Rights NC's monitoring visit. (Compl. ¶ 28.)

On March 7, 2024, Defendants informed Disability Rights NC that it would now be permitted to monitor in the booking and holding area, in the Magistrate's office, *and* the nurse's station and control center but was still limited to speaking only with those individuals Disability Rights NC identified to RCDC in advance of the monitoring visit. (Compl. ¶ 29.) On March 19, 2024, Disability Rights NC reiterated to Defendants that these restrictions did not comport with the P&A statutes. (Compl. ¶ 30; Woollard Decl. Ex. W.) Disability Rights NC reasserted its right to "speak to all incarcerated people who wish to speak with [Disability Rights NC]" and notified Defendants it would return to monitor at RCDC on April 9, 2024. (Woollard Decl. Ex. W.)

On April 3, 2024, Defendants announced they would be providing a "consent form" to persons in the jail to indicate their interest in speaking with Disability Rights NC." (Compl. ¶ 31; Woollard Decl. Ex. X.) On April 5, 2024, Disability Rights NC reiterated to Defendants the rights of all persons with disabilities to interact with

Disability Rights NC, the protection and advocacy system for people with disabilities. (Woollard Decl. Ex. Y.) On April 8, 2024, Defendants stated that at least 30 individuals signed the "consent form" and Disability Rights NC would be provided a conference room at the jail to meet with these individuals between 9 a.m. and 11 a.m. the following day. (Woollard Decl. Ex. Z.)

On April 9, 2024, Disability Rights NC staff returned to RCDC to monitor. (Compl. ¶ 32.) Defendants did not provide Disability Rights NC access to cellblocks, maintained that Disability Rights NC would only be allowed to communicate with the approximately 30 individuals (out of over 200 people present in the jail that day) who signed a "consent form" in advance of the visit, and that its monitoring visit would be limited to two hours. (Compl. ¶ 32-33.) Contrary to their correspondence the day before, Defendants claimed not to have conference rooms available for Disability Rights NC to meet privately with incarcerated individuals for the duration of the monitoring visit, forcing individuals to communicate confidential and personal information to Disability Rights NC in an open seating area next to the booking station and within eyesight and earshot of other incarcerated individuals. (Compl. ¶ 33.)

## QUESTIONS PRESENTED

1. Can Defendants evade the Court's jurisdiction and succeed on their Rule 12(b)(1) motion by asserting that the P&As right of access is subject to indefinite internal review by Defendants themselves?

2. Should Rockingham County be dismissed as a defendant pursuant to Rule 12(b)(6) when it had actual notice of Disability Rights NC's intent to monitor and is responsible for operations of the Rockingham County Detention Center?
3. Did Defendants waive their Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction by making no arguments regarding jurisdiction in their brief?

**ARGUMENT**

Congress has established a system of Protection and Advocacy organizations ("P&A System") in every state and jurisdiction whose mission is to ensure that people with disabilities are not subject to abuse, neglect, or discrimination. The P&A system, of which Disability Rights NC is a part, grew out of a shocking 1972 exposé of the conditions at Willowbrook State School, an institution for people with disabilities. *See* 119 Cong. Rec. 1433, 1471–72, 1544–45 (daily ed. Jan. 18, 1973); *see also Ala. Disabilities Advoc. Program v. J.S. Tarwater Dev. Ctr.*, 97 F. 3d 492, 494 (11th Cir. 1996) ("Disturbed by the inhumane and despicable conditions discovered at New York's Willowbrook State School for persons with developmental disabilities, Congress enacted the Developmental Disabilities Assistance and Bill of Rights Act ("the Act") to protect the human and civil rights of this vulnerable population."). Congress created the P&A system based on findings that individuals with disabilities are at greater risk and more vulnerable than the general population to abuse, neglect, serious injury, and exploitation and that state systems for monitoring compliance with their rights are frequently inadequate. *See* 42 U.S.C. §§ 10801(a) & 15001(a). There are now a total of nine P&A programs authorizing and requiring Disability Rights NC and its sister P&As in every

state, territory, and Native American consortium to protect and advocate for the rights of all people with disabilities. *See* the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C § 10801 *et seq.*; the Protection and Advocacy for Individuals with Developmental Disabilities Act (PAIDD), 42 U.S.C. § 15041 *et seq.*; the Protection and Advocacy of Individual Rights Act (PAIR), 29 U.S.C. § 794e; the Protection and Advocacy for Persons with Traumatic Brain Injury (PATBI), 42 U.S.C. § 300d-53; the Protection and Advocacy for Assistive Technology Act (PAAT), 29 U.S.C § 3004; the Protection and Advocacy for Beneficiaries of Social Security (PABSS), 42 U.S.C. § 1320b-20; the Protection and Advocacy for Voting Act (PAVA), 52 U.S.C. § 21061; the Client Assistance Program (CAP), 29 U.S.C. § 732; and the Strengthening Protections for Social Security Beneficiaries Act, 42 U.S.C. § 405(j) (PABRP).

Pursuant to P&A acts, P&As have a right of access to facilities providing care or treatment to people with disabilities and to all individuals located therein, and the authority to pursue all appropriate remedies and approaches to protect and advocate for their rights. 42 U.S.C. § 10805(a)(1)(B–C), (a)(3) (authority under PAIMI); 42 U.S.C. § 15043(a)(2)(A), (H) (authority under PAIDD); 42 U.S.C. § 300d-53(k) (PATBI); 29 U.S.C. § 794e(f) (PAIR). *See e.g., Va. Off. Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011) (no sovereign immunity from suits brought by the P&A pursuant to P&A acts). When exercising their monitoring authority, P&As are entitled to access all areas of facilities accessible to and used by people with disabilities, including those areas that are not open to the general public or family and friends, and to communicate with all individuals present in the facility. *See* 42 U.S.C. § 10805(a)(3); 42 U.S.C.§

15043(a)(2)(H); 42 U.S.C. § 300d-53(k); 29 U.S.C. § 794e(f); 42 C.F.R. § 51.2, .42; 45 C.F.R. § 1326.27(c), (d). S*ee also Equip for Equal. v. Ingalls Mem'l. Hosp.*, 329 F. Supp. 2d 982, 987 (N.D. Ill. 2004) (granting the P&A access to monitor inside the private and locked nurses' station of a hospital); *Ala. Disabilities Advoc. Program*, 65 F. Supp. 3d at 1325 (P&A entitled to monitor all programs at a facility, not just intensive programs); *Conn. Off. Prot. & Advoc. v. Hartford Bd. Educ.*, 464 F.3d 229 (2d Cir. 2006) (P&A granted access to contact students and parents from a private directory of a school); *J.H. v. Hinds Cnty.*, No. 3:11-cv-327, 2011 U.S. Dist. LEXIS 81659, *7-8, 16-20 (S.D. Miss. July 25, 2011) (P&A allowed to meet with all youth in juvenile detention center during monitoring without having to obtain prior approval from public defender.).

## I. Plaintiff's Assertion of Access Authority to Monitor RCDC Is Ripe for Review.

Defendants' unilateral assertion of terms and conditions on Disability Rights NC's access to monitor at RCDC are ripe for review. A Rule 12(b)(1) motion to dismiss for lack of standing argues either that the complaint fails to establish subject matter jurisdiction or that the allegations establishing standing are not in fact true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Defendants claim the former, that Disability Rights NC failed to plead facts supporting subject matter jurisdiction, but they do not challenge the veracity of Disability Rights NC's factual averments regarding jurisdiction. As such, the Court will "assume all well-plead facts to be true," will draw "all reasonable inferences in favor of the plaintiff," and will afford the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Pond v. U.S.*, 69

F.4th 155, 160 (4th Cir. 2023) (*quoting Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009)*; Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). *See also Nat'l. All. Accessibility, Inc. v. Big Lots Stores, Inc.*, No. 1:11-cv-730, 2013 WL 3147721, at *3 (M.D.N.C. June. 19, 2013) ("Where a defendant has not provided evidence to dispute the veracity of the jurisdictional allegations in the complaint, the court accepts facts alleged in the complaint as true just as it would under Rule 12(b)(6).") (internal quotation marks omitted).

Defendants concede that Disability Rights NC has federally-granted authority to monitor at the jail and that the parties' dispute concerns the scope of Disability Rights NC's federal authority. (Defs.' Brief at 6-7, ECF No. 10.) However, Defendants also argue that Disability Rights NC must acquiesce to Defendants' unspecific demands for information and that Defendants must make a "formalized" decision about the "limits" of Disability Rights NC's access to RCDC before the Court can exercise its jurisdiction. (*See* Defs.' Brief at 7, 11-12, ECF No. 10.) Not only do Defendants find no support in the P&A statutes and regulations or in case law for their assertions, their factual allegations are inconsistent with the plain language of the parties' pre-suit communications, which show that Disability Rights NC has voluntarily provided much of the information that Defendants incorrectly claim to have a right to. (*See* Woollard Decl., filed simultaneously herewith.) Defendant Page's repeated professions of "good faith" and "reasonableness" are not relevant to this suit. (*See* Defs.' Brief 4, 7, 11, 12.)

The claim raised by Disability Rights NC – whether the restrictions Defendants place on the people and places Disability Rights NC has access to within RCDC are contrary to the P&A statutes – is not abstract and is fully ripe for the Court's review.

### A. The P&A statutes provide Disability Rights NC a presumptive right of immediate access to RCDC.

Defendants provide no support for their argument that they are the arbiter of how and when the P&A exercises its federally-mandated oversight functions. In actuality, the P&As are entitled to be given immediate access to covered facilities for purposes of monitoring. *See e.g.* 45 C.F.R. § 1326.27(c)(1) ("Access to service providers shall be afforded immediately upon an oral or written request by the P&A system."); *Ala. Disabilities Advoc. Program*, 65 F. Supp. 3d at 1325 (P&As permitted to exercise their right of access with little or no notice to the facility being monitored to ensure their ability to uncover the true state of conditions in facilities). When a P&A is not afforded immediate access, the burden is on the facility subject to monitoring (not the P&A) to explain the basis for the delay and to provide access as quickly as possible thereafter. *See* 45 C.F.R. § 1326.27(c) (delay of more than 24 hours must be supported by a written statement from a physician); 42 C.F.R. § 51.43 (written statement of basis for delay must be provided promptly). Nowhere in the P&A statutes and regulations is there support for Defendants' argument that the burden is on the P&As to prove their right to monitor. (*See* Defs.' Brief at 4, 11, 12, ECF No. 10.) Defendants should not be permitted to succeed in shifting the burden from one requiring them to provide immediate access to Disability

Rights NC to one that allows the facility subject to monitoring to control Disability Rights NC's access.

Defendants' arguments are premised on a flawed interpretation of the P&A acts. Defendants claim that Disability Rights NC's is not permitted to speak with all individuals housed at RCDC during monitoring as it only has this authority when conducting an investigation into specific incidents or allegations. (Defs.' Brief at 9-10, ECF No. 10.) In fact, Disability Rights NC and its sister P&As are entitled to speak with all individuals housed in jails during the course of monitoring, and not limited to investigations of specific incidents. *See Conn. Off. Prot. & Advoc.*, 464 F.3d at 240–41 ("Defendants conflate § 15043(a)(2)(B) with § 15043(a)(2)(H). The former subsection provides P&A systems access to facilities and permits them to speak with individuals in order to investigate specific incidents of suspected abuse or neglect. The latter subsection provides more generalized access to any individual with a disability in a location that provides services in order to carry out the statutory purpose of protecting the rights of such persons."); *J.H. v. Hinds Cnty.*, 2011 U.S. Dist. LEXIS 81659 at *7-8 (rejecting county interpretation of P&A Acts as only allowing P&A to meet with nondisabled individuals with knowledge of a specific incident because P&As are allow access to all residents regardless of disability when monitoring). Defendants' parsing of the P&A Acts is also incompatible with general tenets of statutory construction, which require looking at subsections within the statute within their context and not reading subparagraphs as a "series of unrelated and isolated provisions." *See Sijapati v. Boente*, 848 F. 3d 210, 215 (4th Cir. 2017) (cleaned up). Defendants' confusion about the rights granted by the P&A

Acts is further evidenced by its claim that Disability Rights NC makes inconsistent demands by asserting its right to speak with individuals encountered in the cellblocks, while also having the right to meet privately and individually with anyone who requests to do so when the right of the P&As to engage in both types of communications are spelled out in the P&A Acts. *See* 42 U.S.C. § 15043(a)(2)(H); 45 C.F.R. § 1326.27(c), (d); 42 C.F.R. § 51.42(c), (d) (collectively granting the right to communicate information about P&A services and contact information and to provide information and training about individual rights to all individuals encountered during monitoring visits as well as to meet and communicate with individuals privately).

Under Defendants' proposed scheme, they could delay Disability Rights NC's monitoring indefinitely merely by requesting more and more information from the P&A without ever issuing a "formalized" decision. (*See* Defs.' Brief at 4 ("Unless and until such time as Defendants actually deny Plaintiff's proposal for "reasonable unaccompanied access," this matter is not ripe for judicial review..."), at 12-13 ("The matter should be dismissed until DRNC explains how they intend to conduct their P&A activities with minimal interference to jail programs. Once this explanation is provided, if a dispute still exists, then the matter will be fit for review..."), ECF No. 10.) It would be incongruous to allow facilities subject to monitoring to unilaterally delay the P&A's completion of its monitoring in this way. Defendants' demand to be the arbiter of Disability Rights NC's scope of access is contrary to law and is ripe for review.

Defendants position the parties' dispute as an "abstract disagreement[] over administrative policies" that is not ripe for the Court's review. (*See* Defs.' Brief at 6, ECF

No. 10 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).) Defendants claim that the parties' dispute remains abstract because they have not "formalized" their decision regarding the scope of access they will allow Disability Rights NC. (Defs.' Brief at 6-7, ECF No. 10.) In *Abbott Labs.*, the Court found that drug manufacturers challenging the FDA's interpretation of a statute was not "abstract" and was ripe for review because the challenged regulation was directed specifically at the drug manufacturers and they were being forced to make a choice between complying with the challenged regulation and risking prosecution for noncompliance. 387 U.S. 136, 137, 153 (1967). Here, Defendants have no rule-making authority but they claim to have authority to determine the scope of Disability Rights NC's access to RCDC and have in fact denied Disability Rights NC access to cellblocks and all individuals housed within RCDC. (Defs.' Brief at 7, ECF No. 10.) The parties' dispute over Disability Rights NC's right of access to RCDC is not abstract; after repeated demands for yet more information, Disability Rights NC was forced to seek the Court's intervention.

The issue of whether Defendants have authority to withhold and condition Disability Rights NC's presumptive right of immediate access on producing its "protocols" is ripe for review.

### B. Defendants' factual assertions in support of its jurisdictional argument are contradicted by the parties' pre-suit correspondence.

While Defendants' motion to dismiss for lack of standing and ripeness rests on a fatally flawed interpretation of the P&A statutes and regulations, the affidavits submitted by Defendants in support of their jurisdictional argument also contain factual

inaccuracies. (*See* Page Aff., Brown Aff., and Boyatt Aff., ECF Nos. 9-1, 9-2, 9-3.) For example, Defendants' claims that Disability Rights NC refused to provide "monitoring protocols" (Defs.' Brief at 4, 7, 10, 12, ECF No. 10), are contradicted by correspondence from Disability Rights NC to Clyde B. Albright, County Attorney for Rockingham County, containing information about what to expect during its monitoring visit and inviting Defendants to collaborate in efforts to minimize disruption. (Woollard Decl. Ex. N.) *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment" in deciding Rule 12(b)(1) motions (internal quotation marks omitted)). Likewise, Disability Rights NC never demanded "unaccompanied access" as Defendants repeatedly allege. (*Compare* Compl. ¶¶ 36, 40, Request for Relief, ECF No. 1 (no claims or demand for "unaccompanied access"), Woollard Decl. Ex. N *with* Defs.' Brief at 4, 11-12, ECF No. 10.) And contrary to Defendants' assertions, Disability Rights NC did demand access to specific locations within RCDC, including all housing units and cellblocks (*Compare* Woollard Decl. Exs. A, V *with* Defs.' Brief at 12, ECF No. 10).

Granting Defendants dismissal based on inaccurate assertions would be improper.

**C. If any questions remain regarding Disability Rights NC's standing, the Court should delay its decision until a later proceeding on the merits.**

Disability Rights NC has established that Defendants' Motion to Dismiss is premised on incorrect interpretations of P&A access authority and is premised on incorrect factual allegations. Defendants' Rule 12(b)(1) motion should be denied outright

because it is not well-grounded in law, or at a minimum denied without prejudice due to factual inaccuracies. However, in the event that there remains any question about Plaintiff's standing at this juncture, because Plaintiff contends that the demand for information and withholding of access violates their rights under the P&A statutes while the Defendants contend it is jurisdictional, the determination in such a scenario must be delayed to a later proceeding on the merits. *See Adams*, 697 F.2d at 1219-1220 (case should not have been dismissed for lack of standing when same set of facts were relevant to jurisdictional and merits question of whether the Fire Chief's actions amounted to improper coercion by public official).

## II. Rockingham County Should Not Be Dismissed from The Case; It Operates RCDC And Had Actual Notice of Disability Rights NC's Efforts to Monitor.

Rockingham County has statutory responsibility for the operation of RCDC and had actual notice of Disability Rights NC's intention to monitor; it should not be dismissed from this case. To succeed on a motion to dismiss pursuant to Rule 12(b)(6), defendants must demonstrate that the plaintiff's claims are legally insufficient and that the plaintiff has stated no claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the motion to dismiss stage, the court must construe all well-pled facts in the plaintiff's favor. *See Nemet Chevrolet, Ltd.*, 591 F.3d at 255. Generally, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

Defendants incorrectly assert that Rockingham County should be dismissed from this suit because North Carolina sheriffs operate jails completely independently of the county government. (*See* Defs.' Brief at 13, ECF No. 10.) Per North Carolina statute, Rockingham County has the authority to appropriate the funds to "establish, acquire, erect, repair, maintain, and operate" RCDC, and the obligation to take corrective action or close the jail when it is not in compliance with standards for conditions for confinement. *See* N.C. Gen. Stat. § 153A-218, 223. Rockingham County is also required to develop a health care plan and pay for the healthcare provided to people incarcerated in RCDC. *See* N.C. Gen. Stat. § 153A-225, 225.2. *See also Jones v. Harrison*, No. 4:12-cv-90, 2013 U.S. Dist. LEXIS 51032, *5 (E.D.N.C. Apr. 9, 2013) (declining to dismiss county from suit because it implicated the adequacy of the statutorily required medical plan for the jail). The County, in short, has responsibility for the safety of the physical plant and the health and well-being of individuals with disabilities in the jail, as well as the duty to remedy any failure of the jail to meet published safety standards – among the very concerns which P&A monitoring is intended to assess and address. Defendant Rockingham County has responsibility for RCDC. *See e.g., Jones*, 2013 U.S. Dist. LEXIS 51032, at *4 (counties are liable for acts in the jail within their final policymaking authority); *King v. Blackwood*, No. 1:21-cv-383, 2023 U.S. Dist. LEXIS 109072, *33 (M.D.N.C. June 23, 2023) ("whether a county or county official has final policymaking authority in a specific area is a question of state law.") (internal citations omitted).

Sheriff Page has the responsibility for "the care and custody of [RCDC]; and shall be, or appoint, the keeper thereof," and is responsible for the hiring, firing, and

supervision of personnel within his office and at RCDC. *See* N.C. Gen. Stat. §§153A-103, 162-22. While North Carolina statutes are silent regarding the allocation of responsibility as between the county and the sheriff to allow access to the P&A, the statutory division above shows that matters of concern in P&A monitoring are within both Defendants' authority. Even if the county delegates some of its authority to the Sheriff in practice, the county remains liable for matters within its statutory policymaking authority. *See King,* 2023 U.S. Dist. LEXIS 109072, at *35 (quoting *Hunter v. Town of Mocksville*, 897 F.3d 538, 555 (4th Cir. 2018)). In light of the expansiveness of the monitoring authority granted to the P&As by Congress, Disability Rights NC is likely to encounter and identify issues within RCDC that fall within both Defendants' decision-making authority such that both are properly named as Defendants.

The two cases Defendants cite as the basis for the claim that Rockingham County is not liable as a matter of law for the violation of Disability Rights NC's federally-granted monitoring authority have no relevance to this case. (Defs' Brief 13, ECF No. 10.) *McLaughlin v. Bailey* involves the claims of two deputy sheriffs that they were wrongfully terminated by the elected sheriff for having differing political views. 240 N.C. App. 159, 165 (N.C. Ct. App. 2015) (finding that deputies are the appointed alter egos of the sheriff and are not entitled to political protections afforded to county employees under state law). This holding is consistent with sheriffs' sole authority regarding personnel decisions involving their deputies. Disability Rights NC's efforts to monitor at RCDC do not implicate Sheriff Page's authority to make employment decisions, but rather the shared responsibility for the operation of the jail.

*State ex rel. Hayes v. Billings* is likewise inapposite. The issue there was whether a county is immune from tort liability related to negligently constructed jail facilities. *See* 240 N.C. 78, 80–81 (N.C. 1954) (county not liable when wrongful death resulted from negligently constructed open stairwell). The holding was based on the nature of the governmental function and the claim asserted, and the lack of basis for creating an exception to general immunity in the specific context of the construction and maintenance of the jail. *Id*. Here, Disability Rights NC brings no cause of action in tort, and none under state law. (*See generally* Compl., ECF No. 1.) Moreover, Defendants have not cited any cases holding or implying immunity from P&A access authority.

Defendants also claim that Disability Rights NC failed to allege that it provided Rockingham County notice of its intent to monitor or that Rockingham County refused access. (Defs.' Brief at 13, ECF No. 10.) However, the Complaint does allege that Clyde B. Albright, County Attorney for Rockingham County, told Disability Rights NC it would not be provided access to RCDC in 2023 and that Disability Rights NC continued communications with both Defendants regarding its monitoring efforts up to the filing of this lawsuit. (Compl. ¶¶ 23-33, ECF No. 1.) Defendants' claim that Disability Rights NC communicated exclusively with Sheriff Page is demonstrably wrong.

Neither *McLaughlin* nor *Hayes* support Defendants' argument that Rockingham County must be dismissed from this suit, and Defendants provide no other cognizable support for their argument that Sheriff Page has exclusive responsibility for the operation of RCDC such that it would be appropriate to dismiss Rockingham County from this suit. At a minimum, Plaintiff establishes that there are questions of law and fact regarding

Rockingham County's responsibility for RCDC such that it would be inappropriate to dismiss them as a defendant at this juncture.

## III. Defendants Waived Their Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) by Abandoning That Argument.

Defendants assert Fed. R. Civ. P. 12(b)(2) as one of the grounds for dismissal in their Motion to Dismiss (ECF No. 9), but appear to have abandoned or waived their claim as their brief makes no affirmative argument that the Court lacks personal jurisdiction over Defendants. *See McClain v. Causey*, No. 1:20-cv-695, 2021 U.S. Dist. LEXIS 5529 at *2 (M.D.N.C. Jan. 12, 2021) (deeming motion to dismiss for lack of personal jurisdiction as "abandoned" where defendants merely cited to the 12(b)(2) standard and made no further argument); *Dickinson v. Univ. of N.C.*, 91 F. Supp. 3d 755, 762 (M.D.N.C. 2015) (motion denied where defendant failed to present argument in briefing in support of motion to dismiss for lack of personal jurisdiction as required by local rules). Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

## CONCLUSION

Defendants' motion to dismiss should be denied because Plaintiff has standing as the P&A to enforce its access authority, because Plaintiff has stated a plausible claim against both Defendants, and because Defendants waived their motion with regard to personal jurisdiction.

This 23rd day of July, 2024

Respectfully submitted,

/s/ Holly Stiles
Holly Stiles
holly.stiles@disabilityrightsnc.org
N.C. State Bar No. 38930
Marisa Leib-Neri
N.C. State Bar No. 61389
marisa.leib-neri@disabilityrightsnc.org
DISABILITY RIGHTS NC
801 Corporate Center Drive, Suite 118
Raleigh, NC 27607
Phone: (919) 856-2195
Fax: (919) 856-2244

ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-352-UA-JLW

| | | |
|---|---|---|
| DISABILITY RIGHTS NORTH CAROLINA,<br><br>Plaintiff,<br><br>v.<br><br>SAMUEL SCOTT PAGE, in his official capacity as Sheriff for Rockingham County, and ROCKINGHAM COUNTY,<br><br>Defendants. | ) | CERTIFICATE OF COMPLIANCE |

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the word count for Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss is less than 6,250 words. In making this certification, the undersigned has relied upon Microsoft Word and its word count feature.

This 23rd day of July, 2024

Respectfully submitted,

/s/ Holly Stiles
Holly Stiles